## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | **Jointly Administered** |
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, and | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| Debtors. | Chapter 11 |

| | |
|---|---|
| EPIC Companies Midwest, LLC, | |
| EPIC Companies Midwest 2023, LLC, and | |
| EPIC Employee, LLC, | |
| Plaintiffs, | |
| v. | Adversary No. _____ |
| Boulevard Square II, LLC, | |
| Boulevard Square III, LLC, and | |
| Boulevard Square IV, LLC, | |
| Defendants. | |

## COMPLAINT

Plaintiffs, EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, and EPIC Employee, LLC (collectively, the "Plaintiffs"), for their Complaint against Defendants, Boulevard Square II, LLC, Boulevard Square III, LLC, and Boulevard Square IV, LLC (collectively, the "Defendants"), state and allege as follows:

## PARTIES

### I. THE PLAINTIFFS.

1.     EPIC Companies Midwest, LLC ("EPIC Midwest") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around November 19, 2018. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.[1]

2.     EPIC Companies Midwest 2023, LLC ("EPIC Midwest 2023") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around August 15, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

3.     EPIC Employee, LLC ("EPIC Employee") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around August 31, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

### II. THE DEFENDANTS.

4.     Boulevard Square II, LLC ("Boulevard II") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around December 12, 2012. Its principal place of business is located at 4840 Amber Valley Parkway South, Fargo, North Dakota 58104.

5.     Boulevard Square III, LLC ("Boulevard III") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around

---

[1] As of October 10, 2024, all the Plaintiffs' principal addresses changed to 900 Long Lake Road, Suite 180, c/o Lighthouse Management Group, Inc., New Brighton, Minnesota 55112-6455.

May 26, 2017. Its principal place of business is located at 5630 34th Avenue South, Suite 120, Fargo, North Dakota 58104.

6.      Boulevard Square IV, LLC ("Boulevard IV") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around January 12, 2022. Its principal place of business is located at 400 10th Street SE, Minot, North Dakota, 58701.

7.      The Defendants owe funds to the Plaintiffs pursuant to certain loan transactions.

## JURISDICTION AND VENUE

8.      The Plaintiffs filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 8, 2024 (the "Petition Date"). The bankruptcy cases are currently pending before this Court.

9.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

10.     Venue is proper under 28 U.S.C. §§ 1408 and 1409.

11.     The Plaintiffs consent to the entry of final orders and judgment by this Court pursuant to Fed. R. Bankr. P. 7008.

12.     This Complaint is filed under Fed. R. Bankr. P. 7001.

13.     The Plaintiffs and the Defendants are properly joined in this adversary proceeding under Fed. R. Civ. P. 20, as incorporated by Fed. R. Bankr. P. 7020, as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and the claims involve common questions of law or fact.

## FACTUAL BACKGROUND

**I.   PLAINTIFFS' GENERAL STRUCTURE AND PURPOSE.**

14.    The Plaintiffs are part of a series of affiliated companies known collectively as "EPIC Companies."

15.    EPIC Companies generally consist of the Plaintiffs, certain real estate holding entities, including the Defendants, certain service-providing companies (i.e., property management and construction), and other companies involved in hospitality, restaurant, entertainment, and similar industries. All of them are affiliated with certain individuals who structured, organized, and sponsored this business activity, including Todd Berning.

16.    Each of the Plaintiffs were formed for the alleged purpose of providing funds to various real estate development projects throughout the State of North Dakota, each of which was developed and managed by subsidiaries of EPIC Companies (the "Project Companies").

17.    On information and belief, each of the Project Companies is a "single purpose entity," meaning that each holds one real estate development project.

18.    Based on records reviewed to date, each of the Project Companies appears to have a different ownership group.

19.    Many of the Project Companies have borrowed money from banks for the construction of the real estate projects at issue, and those banks generally have senior secured positions on the real estate owned by each of the Project Companies.

20.    The Plaintiffs typically provided funds in the form of "subordinated debt" to each of the Project Companies (the "Sub Debt"). The Sub Debt would be junior to any bank debt but superior to the equity holders in each of the Project Companies.

21.    With funds received by the Plaintiffs from certain individual investors, the Plaintiffs made loans to the Project Companies.

22.    Most loans by the Plaintiffs to the Project Companies are documented by promissory notes but, on information and belief, some may be reflected solely in accounting records.

23.    The majority of the Sub Debt required the Project Companies to make monthly installment payments to the Plaintiffs and a final balloon payment on the applicable maturity date.

24.    On information and belief, the Defendants are some of the Project Companies. The Defendants have an ownership interest in a real estate development project located on the 3000 block of Bluestem Drive in West Fargo, North Dakota.

## II.    TRANSFERS TO DEFENDANTS FROM EPIC MIDWEST.

### A. Boulevard Square II, LLC.

25.    On October 1, 2021, Debtor EPIC Midwest and Boulevard II entered into a promissory note with the following balance as of as of June 30, 2024:

| EPIC Midwest to Boulevard II | | | | | | | |
|---|---|---|---|---|---|---|---|
| Lender | Date | Original Principal | Monthly Payment | Maturity Date | Interest | Late Charge | Total Amount Due |
| EPIC Midwest | 10/1/21 | $50,000 | $270.83 | 10/1/24 | 6.5% | .04 per $1 | $40,225.24 |
| | | | | | | | **$40,225.24** |

(the "Boulevard II Note").

26.    Pursuant to the Boulevard II Note, EPIC Midwest offered to loan $50,000 to Boulevard II under certain terms and conditions and Boulevard II accepted that offer. The Boulevard II Note is unsecured.

27.    Under the terms of the Boulevard II Note, Boulevard II was required to make monthly payments to EPIC Midwest.

28.     The failure to make payments to EPIC Midwest as and when such payments were due constitutes a default under the terms of the Boulevard II Note.

29.     On September 22, 2022, and pursuant to the Boulevard II Note, EPIC Midwest transferred a total of $50,000 to Boulevard II:

| EPIC Midwest to Boulevard II | | |
|---|---|---|
| Lender | Date of Transfer | Total Amount |
| EPIC Midwest | 9/22/22 | $50,000 |
| | | **$50,000** |

(the "Boulevard II Transfer").

30.     Between October 31, 2021 and May 31, 2024, Boulevard II only paid EPIC Midwest $10,000 in principal and $8,179.12 in interest, for a total of $18,179.12.

31.     On or around June 30, 2024, Boulevard II ceased making payments to EPIC Midwest and defaulted under the Boulevard II Note.

32.     Therefore, all amounts owed to EPIC Midwest by Boulevard II became immediately due and payable.

33.     As of October 31, 2024, Boulevard II owes EPIC Midwest a total of at least $41,118.02, which consists of $40,000 of principal, $1,083.35 of interest, and $34.67 of late fees, with interest and fees continuing to accrue.

**B.  Boulevard Square III, LLC.**

34.     Between February 1, 2021 and January 1, 2023, Debtor EPIC Midwest and Boulevard III entered into several promissory notes with the following balances as of June 30, 2024:

| EPIC Midwest to Boulevard III | | | | | | | |
|---|---|---|---|---|---|---|---|
| Lender | Date | Original Principal | Monthly Payment | Maturity Date | Interest | Late Charge | Total Amount Due |
| EPIC Midwest | 2/1/21 | $700,000 | $3,966.67 | 2/1/25 | 7.0% | .04 per $1 | $688,250.67 |
| EPIC Midwest | 3/1/21 | $500,000 | $2,916.67 | 3/31/25 | 7.0% | .04 per $1 | $506,066.67 |
| EPIC Midwest | 6/27/22 | $200,000 | $1,166.67 | 6/1/25 | 7.0% | .04 per $1 | $202,426.67 |

| EPIC Midwest to Boulevard III | | | | | | | |
|---|---|---|---|---|---|---|---|
| Lender | Date | Original Principal | Monthly Payment | Maturity Date | Interest | Late Charge | Total Amount Due |
| EPIC Midwest | 1/1/23 | $300,000 | $1,750.00 | 1/1/26 | 7.0% | .04 per $1 | $303,640.00 |
| | | | | | | | **$1,700,384.01** |

(collectively, the "<u>Boulevard III ECM Notes</u>").

35.     Pursuant to the Boulevard III ECM Notes, EPIC Midwest offered to loan $1,700,000 to Boulevard III under certain terms and conditions and Boulevard III accepted that offer. The Boulevard III ECM Notes are unsecured.

36.     Under the terms of the Boulevard III ECM Notes, Boulevard III was required to make monthly payments to EPIC Midwest.

37.     The failure to make payments to EPIC Midwest as and when such payments were due constitutes a default under the terms of the Boulevard III ECM Notes.

38.     Between February 5, 2021 and January 12, 2023, and pursuant to the Boulevard III ECM Notes, EPIC Midwest transferred a total of $1,700,000 to Boulevard III:

| EPIC Midwest to Boulevard III | | |
|---|---|---|
| Lender | Date of Transfer | Total Amount |
| EPIC Midwest | 2/5/21 | $700,000 |
| EPIC Midwest | 3/12/21 | $500,000 |
| EPIC Midwest | 6/27/22 | $200,000 |
| EPIC Midwest | 1/6/23 | $50,000 |
| EPIC Midwest | 1/12/23 | $250,000 |
| | | **$1,700,000** |

(collectively, the "<u>Boulevard III ECM Transfers</u>).

39.     To date, Boulevard III has only paid EPIC Midwest $20,000 in principal and $320,250.27 in interest, for a total of $340,250.27.

40.     On or around May 31, 2024, Boulevard III ceased making payments to EPIC Midwest and defaulted under the Boulevard III ECM Notes.

41.     Therefore, all amounts owed to EPIC Midwest by Boulevard III became immediately due and payable.

42.     As of September 30, 2024, Boulevard III owes EPIC Midwest a total of at least $1,721,860.05, which consists of $1,680,000 of principal, $40,250.05 of interest, and $1,610 of late fees, with interest and fees continuing to accrue.

**C.  Boulevard Square IV, LLC.**

43.     On August 1, 2022, Debtor EPIC Midwest and Boulevard IV entered into a promissory note with the following balances as of June 30, 2024:

| EPIC Midwest to Boulevard IV | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Lender** | **Date** | **Original Principal** | **Monthly Payment** | **Maturity Date** | **Interest** | **Late Charge** | **Total Amount Due** |
| EPIC Midwest | 8/1/22 | $225,000 | $1,218.75 | 8/1/25 | 6.5% | .04 per $1 | $227,535 |
| | | | | | | | **$227,535** |

(the "Boulevard IV ECM Note," and together with the Boulevard II Note and the Boulevard III ECM Notes, the "EPIC Midwest Notes").

44.     Pursuant to the Boulevard IV ECM Note, EPIC Midwest offered to loan $225,000 to Boulevard IV under certain terms and conditions and Boulevard IV accepted that offer. The Boulevard IV ECM Note is unsecured.

45.     Under the terms of the Boulevard IV ECM Note, Boulevard IV was required to make monthly payments to EPIC Midwest.

46.     The failure to make payments to EPIC Midwest as and when such payments were due constitutes a default under the terms of the Boulevard IV ECM Note.

47.     On August 1, 2022, and pursuant to the Boulevard IV ECM Note, EPIC Midwest transferred a total of $225,000 to Boulevard IV:

| EPIC Midwest to Boulevard IV | | |
|---|---|---|
| Lender | Date of Transfer | Total Amount |
| EPIC Midwest | 8/1/22 | $225,000 |
| | | **$225,000** |

(the "Boulevard IV ECM Transfer," and together with the Boulevard II Transfer and the Boulevard III ECM Transfers, the "EPIC Midwest Transfers").

48.     To date, Boulevard IV has only paid EPIC Midwest $25,593.75 in interest.

49.     On or around May 31, 2024, Boulevard IV ceased making payments to EPIC Midwest and defaulted under the Boulevard IV ECM Note.

50.     Therefore, all amounts owed to EPIC Midwest by Boulevard IV became immediately due and payable.

51.     As of September 30, 2024, Boulevard IV owes EPIC Midwest a total of at least $231,337.50, which consists of $225,000 of principal, $6,093.75 of interest, and $243.75 of late fees, with interest and fees continuing to accrue.

52.     Before, during, and after the period from February 1, 2021 to January 12, 2023, EPIC Midwest had creditors, including various individual investors.

53.     On June 11, 2024, EPIC Midwest's board of directors appointed Lighthouse Management Group, Inc. ("Lighthouse") as its Chief Restructuring Officer.

54.     Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between February 1, 2021 and January 12, 2023, and at all relevant times between entry into the EPIC Midwest Notes and the EPIC Midwest Transfers, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur,

or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

55.     The financial records reviewed by Lighthouse also indicate that between February 1, 2021 and January 12, 2023, and at all relevant times between entry into the EPIC Midwest Notes and the EPIC Midwest Transfers, EPIC Midwest was insolvent or became insolvent thereafter.

## III.    TRANSFERS TO DEFENDANTS FROM EPIC MIDWEST 2023.

### A.  Boulevard Square III, LLC.

56.     On January 1, 2024, Debtor EPIC Midwest 2023 and Boulevard III entered into a promissory note with the following balances as of June 30, 2024:

| Lender | Date | Original Principal | Monthly Payment | Maturity Date | Interest | Late Charge | Total Amount Due |
|---|---|---|---|---|---|---|---|
| EPIC Midwest 2023 to Boulevard III | | | | | | | |
| EPIC Midwest 2023 | 1/1/24 | $10,000 | $66.67 | 1/1/27 | 8.0% | .04 per $1 | $10,138.67 |
| | | | | | | | **$10,138.67** |

(the "Boulevard III E23 Note").

57.     Pursuant to the Boulevard III E23 Note, EPIC Midwest 2023 offered to loan $10,000 to Boulevard III under certain terms and conditions and Boulevard III accepted that offer. The Boulevard III E23 Note is unsecured.

58.     Under the terms of the Boulevard III E23 Note, Boulevard III was required to make monthly payments to EPIC Midwest 2023.

59.     The failure to make payments to EPIC Midwest 2023 as and when such payments were due constitutes a default under the terms of the Boulevard III E23 Note.

60.     On December 26, 2023, and pursuant to the Boulevard III E23 Note, EPIC Midwest 2023 transferred a total of $10,000 to Boulevard III:

| EPIC Midwest 2023 to Boulevard III | | |
|---|---|---|
| **Lender** | **Date of Transfer** | **Total Amount** |
| EPIC Midwest 2023 | 12/26/23 | $10,000 |
| | | **$10,000** |

(the "<u>Boulevard III E23 Transfer</u>").

61.     To date, Boulevard III has only paid EPIC Midwest 2023 $266.68 in interest.

62.     On or around May 31, 2024, Boulevard III ceased making payments to EPIC Midwest 2023 and defaulted under the Boulevard III E23 Note.

63.     Therefore, all amounts owed to EPIC Midwest 2023 by Boulevard III became immediately due and payable.

64.     As of September 30, 2024, Boulevard III owes EPIC Midwest 2023 a total of at least $10,346.68, which consists of $10,000 of principal, $333.35 of interest, and $13.33 of late fees, with interest and fees continuing to accrue.

**B.  Boulevard Square IV, LLC.**

65.     Between June 1, 2023 and January 1, 2024, Debtor EPIC Midwest 2023 and Boulevard IV entered into some promissory notes with the following balances as of June 30, 2024:

| EPIC Midwest 2023 to Boulevard IV | | | | | | |
|---|---|---|---|---|---|---|
| **Lender** | **Date** | **Original Principal** | **Monthly Payment** | **Maturity Date** | **Interest** | **Late Charge** | **Total Amount Due** |
| EPIC Midwest 2023 | 6/1/23 | $20,000 | $133.33 | 6/1/26 | 8.0% | .04 per $1 | $20,277.33 |
| EPIC Midwest 2023 | 1/1/24 | $10,000 | $66.67 | 1/1/27 | 8.0% | .04 per $1 | $10,138.67 |
| | | | | | | | **$30,416** |

(collectively, the "<u>Boulevard IV E23 Notes</u>," and together with the Boulevard III E23 Note, the "<u>EPIC Midwest 2023 Notes</u>").

66.     Pursuant to the Boulevard IV E23 Notes, EPIC Midwest 2023 offered to loan $30,000 to Boulevard IV under certain terms and conditions and Boulevard IV accepted that offer. The Boulevard IV E23 Notes are unsecured.

67.     Under the terms of the Boulevard IV E23 Notes, Boulevard IV was required to make monthly payments to EPIC Midwest 2023.

68.     The failure to make payments to EPIC Midwest 2023 as and when such payments were due constitutes a default under the terms of the Boulevard IV E23 Notes.

69.     Between June 13, 2023 and December 26, 2023, and pursuant to the Boulevard IV E23 Notes, EPIC Midwest 2023 transferred a total of $30,000 to Boulevard IV:

| EPIC Midwest 2023 to Boulevard IV | | |
|---|---|---|
| Lender | Date of Transfer | Total Amount |
| EPIC Midwest 2023 | 6/13/23 | $20,000 |
| EPIC Midwest 2023 | 12/26/23 | $10,000 |
| | | **$30,000** |

(collectively, the "Boulevard IV E23 Transfers," and together with the Boulevard III E23 Transfers, the "EPIC Midwest 2023 Transfers").

70.     To date, Boulevard IV only paid EPIC Midwest 2023 $1,733.31 in interest.

71.     On or around May 31, 2024, Boulevard IV ceased making payments to EPIC Midwest 2023 and defaulted under the Boulevard IV E23 Notes.

72.     Therefore, all amounts owed to EPIC Midwest 2023 by Boulevard IV became immediately due and payable.

73.     As of September 30, 2024, Boulevard IV owes EPIC Midwest 2023 a total of at least $31,040, which consists of $30,000 of principal, $1,000 of interest, and $40.00 of late fees, with interest and fees continuing to accrue.

74.     Before, during, and after the period from June 1, 2023 to January 1, 2024, EPIC Midwest 2023 had creditors, including various individual investors.

75.     On June 11, 2024, EPIC Midwest 2023's board of directors appointed Lighthouse as its Chief Restructuring Officer.

76.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between June 1, 2023 and January 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

77.    The financial records reviewed by Lighthouse also indicate that between June 1, 2023 and January 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

## IV.    TRANSFERS TO BOULEVARD III FROM EPIC EMPLOYEE.

78.    On May 1, 2024, Debtor EPIC Employee and Boulevard III entered into a promissory note with the following balance as of June 30, 2024:

| Lender | Date | Original Principal | Monthly Payment | Maturity Date | Interest | Late Charge | Total Amount Due |
|---|---|---|---|---|---|---|---|
| EPIC Employee | 5/1/24 | $30,000 | $187.50 | 5/1/27 | 7.5% | .04 per $1 | $30,585 |
| | | | | | | | **$30,585** |

(the "<u>EPIC Employee Note</u>").

79.    Pursuant to the EPIC Employee Note, EPIC Employee offered to loan $30,000 to the Boulevard III under certain terms and conditions and Boulevard III accepted that offer. The EPIC Employee Note is unsecured.

80.    Under the terms of the EPIC Employee Note, Boulevard III was required to make monthly payments to EPIC Employee.

81. The failure to make payments to EPIC Employee as and when such payments were due constitutes a default under the terms of the EPIC Employee Note.

82. On April 17, 2024, and pursuant to the EPIC Employee Note, EPIC Employee transferred a total of $30,000 to Boulevard III:

| Lender | Date of Transfer | Total Amount |
|--------|------------------|--------------|
| EPIC Employee | 4/17/24 | $30,000 |
| | | **$30,000** |

(the "EPIC Employee Transfer").

83. To date, Boulevard III has made no payments to EPIC Employee thereby defaulting under the EPIC Employee Note.

84. Therefore, all amounts owed to EPIC Employee by Boulevard III are immediately due and payable.

85. As of September 30, 2024, Boulevard III owes EPIC Employee a total of at least $30,975, which consists of $30,000 of principal, $937.50 of interest, and $37.50 of late fees, with interest and fees continuing to accrue.

86. Before, during, and after the period from April 17, 2024 to May 1, 2024, EPIC Employee had creditors, including various individual investors.

87. On June 11, 2024, EPIC Employee's board of directors appointed Lighthouse as its Chief Restructuring Officer.

88. Lighthouse has reviewed EPIC Employee's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between April 17, 2024 and May 1, 2024, and at all relevant times between entry into the EPIC Employee Note and the EPIC Employee Transfer Boulevard III, EPIC Employee was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC

Employee were unreasonably small in relation to the business or transaction or EPIC Employee intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

89.     The financial records reviewed by Lighthouse also indicate that between April 17, 2024 and May 1, 2024, and at all relevant times between entry into the EPIC Employee Note and the EPIC Employee Transfer to Boulevard III, EPIC Employee was insolvent or became insolvent thereafter.

**V.     PRIOR DEMAND FOR AMOUNTS OWED.**

90.     On August 1, 2024, the Plaintiffs caused demand letters to be sent on their behalf to the Defendants demanding the amounts owed to the Plaintiffs under the various notes described above.

91.     As of the date of this Complaint, the Defendants have failed to pay the Plaintiffs.

92.     The Plaintiffs continue to be harmed by the Defendants' failure to pay the outstanding amounts owed by the Defendants to the Plaintiffs.

93.     The Plaintiffs are still in the process of tracing all of their transfers to the various Project Companies. To the extent the Defendants further transferred funds to other Project Companies, the Plaintiffs expressly reserve the right to pursue additional claims against the Defendants and any subsequent transferees, including, but not limited to, claims under Chapter 5 of the Bankruptcy Code.

**COUNT I**
**BREACH OF CONTRACT**
**(EPIC Midwest v. Boulevard II)**

94.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

95.    On October 1, 2021, EPIC Midwest and Boulevard II entered into the Boulevard II Note.

96.    Under the terms of the Boulevard II Note, EPIC Midwest agreed to provide Boulevard II a total of $50,000; in exchange, Boulevard II agreed to make regular monthly payments to EPIC Midwest.

97.    On September 22, 2022, and pursuant to the Boulevard II Note, EPIC Midwest transferred a total of $50,000 to Boulevard II.

98.    On or around June 30, 2024, Boulevard II ceased making payments to EPIC Midwest as required by the Boulevard II Note.

99.    Boulevard II's failure to make monthly payments to EPIC Midwest constitutes a breach of the Boulevard II Note.

100.    Due to Boulevard II's breach of the Boulevard II Note, EPIC Midwest has been damaged in the amount of at least $41,118.02, plus interest and other fees and costs allowed by law and the Boulevard II Note.

### COUNT II
### BREACH OF CONTRACT
### (EPIC Midwest v. Boulevard III)

101.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

102.    Between February 1, 2021 and January 1, 2023, EPIC Midwest and Boulevard III entered into the Boulevard III ECM Notes.

103.    Under the terms of the Boulevard III ECM Notes, EPIC Midwest agreed to provide Boulevard III a total of $1,700,000; in exchange, Boulevard III agreed to make regular monthly payments to EPIC Midwest.

104.    Between February 5, 2021 and January 12, 2023, and pursuant to the Boulevard III ECM Notes, EPIC Midwest transferred a total of $1,700,000 to Boulevard III.

105.    On or around May 31, 2024, Boulevard III ceased making payments to EPIC Midwest as required by the Boulevard III ECM Notes.

106.    Boulevard III's failure to make monthly payments to EPIC Midwest constitutes a breach of the Boulevard III ECM Notes.

107.    Due to Boulevard III's breach of the Boulevard III ECM Notes, EPIC Midwest has been damaged in the amount of at least $1,721,860.05, plus interest and other fees and costs allowed by law and the Boulevard III ECM Notes.

**COUNT III**
**BREACH OF CONTRACT**
**(EPIC Midwest v. Boulevard IV)**

108.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

109.    On August 1, 2022, EPIC Midwest and Boulevard IV entered into the Boulevard IV ECM Note.

110.    Under the terms of the Boulevard IV ECM Note, EPIC Midwest agreed to provide Boulevard IV a total of $225,000; in exchange, Boulevard IV agreed to make regular monthly payments to EPIC Midwest.

111.    On August 1, 2022, and pursuant to the Boulevard IV ECM Note, EPIC Midwest transferred a total of $225,000 to Boulevard IV.

112.    On or around May 31, 2024, Boulevard IV ceased making payments to EPIC Midwest as required by the Boulevard IV ECM Note.

113.    Boulevard IV's failure to make monthly payments to EPIC Midwest constitutes a breach of the Boulevard IV ECM Note.

114.    Due to Boulevard IV's breach of the Boulevard IV ECM Note, EPIC Midwest has been damaged in the amount of at least $231,337.50, plus interest and other fees and costs allowed by law and the Boulevard IV ECM Note.

**COUNT IV**
**BREACH OF CONTRACT**
**(EPIC Midwest 2023 v. Boulevard III)**

115.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

116.    On January 1, 2024, EPIC Midwest 2023 and Boulevard III entered into the Boulevard III E23 Note.

117.    Under the terms of the Boulevard III E23 Note, EPIC Midwest 2023 agreed to provide Boulevard III a total of $10,000; in exchange, Boulevard III agreed to make regular monthly payments to EPIC Midwest 2023.

118.    On December 26, 2023, and pursuant to the Boulevard III E23 Note, EPIC Midwest 2023 transferred a total of $10,000 to Boulevard III.

119.    On or around May 31, 2024, Boulevard III ceased making payments to EPIC Midwest 2023 as required by the Boulevard III E23 Note.

120.    Boulevard III's failure to make monthly payments to EPIC Midwest 2023 constitutes a breach of the Boulevard III E23 Note.

121.    Due to Boulevard III's breach of the Boulevard III E23 Note, EPIC Midwest 2023 has been damaged in the amount of at least $10,346.68, plus interest and other fees and costs allowed by law and the Boulevard III E23 Note.

**COUNT V**
**BREACH OF CONTRACT**
**(EPIC Midwest 2023 v. Boulevard IV)**

122.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

123.    Between June 1, 2023 and January 1, 2024, EPIC Midwest 2023 and Boulevard IV entered into the Boulevard IV E23 Notes.

124.    Under the terms of the Boulevard IV E23 Notes, EPIC Midwest 2023 agreed to provide Boulevard IV a total of $30,000; in exchange, Boulevard IV agreed to make regular monthly payments to EPIC Midwest 2023.

125.    Between January 13, 2023 and December 26, 2023, and pursuant to the Boulevard IV E23 Notes, EPIC Midwest 2023 transferred a total of $30,000 to Boulevard IV.

126.    On or around May 31, 2024, Boulevard IV ceased making payments to EPIC Midwest 2023 as required by the Boulevard IV E23 Notes.

127.    Boulevard IV's failure to make monthly payments to EPIC Midwest 2023 constitutes a breach of the Boulevard IV E23 Notes.

128.    Due to Boulevard IV's breach of the Boulevard IV E23 Notes, EPIC Midwest 2023 has been damaged in the amount of at least $31,040, plus interest and other fees and costs allowed by law and the Boulevard IV E23 Notes.

**COUNT VI**
**BREACH OF CONTRACT**
**(EPIC Employee v. Boulevard III)**

129.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

130.   On May 1, 2024, EPIC Employee and Boulevard III entered into the EPIC Employee Note.

131.   Under the terms of the EPIC Employee Note, EPIC Employee agreed to provide Boulevard III a total of $30,000; in exchange, Boulevard III agreed to make regular monthly payments to EPIC Employee.

132.   On April 17, 2024, and pursuant to the EPIC Employee Note, EPIC Employee transferred a total of $30,000 to Boulevard III.

133.   To date, Boulevard III has made no payments to EPIC Employee.

134.   Boulevard III's failure to make payments to EPIC Employee constitutes a breach of the EPIC Employee Note.

135.   Due to Boulevard III's breach of the EPIC Employee Note, EPIC Employee has been damaged in the amount of at least $30,975, plus interest and other fees and costs allowed by law and the EPIC Employee Note.

**COUNT VII**
**UNJUST ENRICHMENT**
**(EPIC Midwest v. Boulevard II)**

136.   The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

137.   EPIC Midwest conferred a benefit to Boulevard II by providing $50,000 for use in the Boulevard II's real estate development project.

138.   Boulevard II knowingly accepted the $50,000 from EPIC Midwest.

139.   As Boulevard II did not make the agreed upon monthly payments to EPIC Midwest, Boulevard II is not entitled to the benefit of the value of the $50,000 payment from EPIC Midwest.

140.    Under the circumstances, it would be unjust and inequitable to permit Boulevard II to retain the benefit from its actions.

141.    The amount of benefit wrongfully retained by Boulevard II is in the amount of at least $40,000, plus interest and other fees and costs allowed by law.

### COUNT VIII
### UNJUST ENRICHMENT
### (EPIC Midwest v. Boulevard III)

142.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

143.    EPIC Midwest conferred a benefit to Boulevard III by providing $1,700,000 for use in Boulevard III's real estate development project.

144.    Boulevard III knowingly accepted the $1,700,000 from EPIC Midwest.

145.    As Boulevard III did not make the agreed upon monthly payments to EPIC Midwest, Boulevard III is not entitled to the benefit of the value of the $1,700,000 payment from EPIC Midwest.

146.    Under the circumstances, it would be unjust and inequitable to permit Boulevard III to retain the benefit from its actions.

147.    The amount of benefit wrongfully retained by Boulevard III is in the amount of at least $1,680,000, plus interest and other fees and costs allowed by law.

### COUNT IX
### UNJUST ENRICHMENT
### (EPIC Midwest v. Boulevard IV)

148.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

149.    EPIC Midwest conferred a benefit to Boulevard IV by providing $225,000 for use in Boulevard IV's real estate development project.

150.    Boulevard IV knowingly accepted the $225,000 from EPIC Midwest.

151.    As Boulevard IV did not make the agreed upon monthly payments to EPIC Midwest, Boulevard IV is not entitled to the benefit of the value of the $225,000 payment from EPIC Midwest.

152.    Under the circumstances, it would be unjust and inequitable to permit Boulevard IV to retain the benefit from its actions.

153.    The amount of benefit wrongfully retained by Boulevard IV is in the amount of at least $225,000, plus interest and other fees and costs allowed by law.

**COUNT X**
**UNJUST ENRICHMENT**
**(EPIC Midwest 2023 v. Boulevard III)**

154.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

155.    EPIC Midwest 2023 conferred a benefit to Boulevard III by providing $10,000 for use in Boulevard III's real estate development project.

156.    Boulevard III knowingly accepted the $10,000 from EPIC Midwest 2023.

157.    As Boulevard III did not make the agreed upon monthly payments to EPIC Midwest 2023, Boulevard III is not entitled to the benefit of the value of the $10,000 payment from EPIC Midwest 2023.

158.    Under the circumstances, it would be unjust and inequitable to permit Boulevard III to retain the benefit from its actions.

159.    The amount of benefit wrongfully retained by Boulevard III is in the amount of at least $10,000, plus interest and other fees and costs allowed by law.

## COUNT XI
## UNJUST ENRICHMENT
### (EPIC Midwest 2023 v. Boulevard IV)

160.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

161.    EPIC Midwest 2023 conferred a benefit to Boulevard IV by providing $30,000 for use in Boulevard IV's real estate development project.

162.    Boulevard IV knowingly accepted the $30,000 from EPIC Midwest 2023.

163.    As Boulevard IV did not make the agreed upon monthly payments to EPIC Midwest 2023, Boulevard IV is not entitled to the benefit of the value of the $30,000 payment from EPIC Midwest 2023.

164.    Under the circumstances, it would be unjust and inequitable to permit Boulevard IV to retain the benefit from its actions.

165.    The amount of benefit wrongfully retained by Boulevard IV is in the amount of at least $30,000 plus interest and other fees and costs allowed by law.

## COUNT XII
## UNJUST ENRICHMENT
### (EPIC Employee v. Boulevard III)

166.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

167.    EPIC Employee conferred a benefit Boulevard III by providing $30,000 for use in Boulevard III's real estate development project.

168.    Boulevard III knowingly accepted the $30,000 from EPIC Employee.

169.    As Boulevard III did not make the agreed upon monthly payments to EPIC Employee, Boulevard III is not entitled to the benefit of the value of the $30,000 payment from EPIC Employee.

170.    Under the circumstances, it would be unjust and inequitable to permit Boulevard III to retain the benefit from its actions.

171.    The amount of benefit wrongfully retained by Boulevard III is in the amount of at least $30,000, plus interest and other fees and costs allowed by law.

### COUNT XIII
### ACCOUNT STATED
### (EPIC Midwest v. Boulevard II)

172.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

173.    EPIC Midwest demanded payment of Boulevard II's account with EPIC Midwest.

174.    Boulevard II did not substantively respond to the demand letter or dispute any amounts.

175.    Boulevard II did not pay the amounts due and owing to EPIC Midwest.

176.    As a result, EPIC Midwest has been damaged in the amount of at least $41,118.02, plus interest and other fees and costs allowed by law.

### COUNT XIV
### ACCOUNT STATED
### (EPIC Midwest v. Boulevard III)

177.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

178.    EPIC Midwest demanded payment of Boulevard III's account with EPIC Midwest.

179.    Boulevard III did not substantively respond to the demand letter or dispute any amounts.

180.    Boulevard III did not pay the amounts due and owing to EPIC Midwest.

181.    As a result, EPIC Midwest has been damaged in the amount of at least $1,721,860.05, plus interest and other fees and costs allowed by law.

**COUNT XV**
**ACCOUNT STATED**
**(EPIC Midwest v. Boulevard IV)**

182.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

183.    EPIC Midwest demanded payment of Boulevard IV's account with EPIC Midwest.

184.    Boulevard IV did not substantively respond to the demand letter or dispute any amounts.

185.    Boulevard IV did not pay the amounts due and owing to EPIC Midwest.

186.    As a result, EPIC Midwest has been damaged in the amount of at least $231,337.50, plus interest and other fees and costs allowed by law.

**COUNT XVI**
**ACCOUNT STATED**
**(EPIC Midwest 2023 v. Boulevard III)**

187.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

188.    EPIC Midwest 2023 demanded payment of Boulevard III's account with EPIC Midwest 2023.

189.    Boulevard III did not substantively respond to the demand letter or dispute any amounts.

190.    Boulevard III did not pay the amounts due and owing to EPIC Midwest 2023.

191.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $10,346.68, plus interest and other fees and costs allowed by law.

**COUNT XVII**
**ACCOUNT STATED**
**(EPIC Midwest 2023 v. Boulevard IV)**

192.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

193.    EPIC Midwest 2023 demanded payment of Boulevard IV's account with EPIC Midwest 2023.

194.    Boulevard IV did not substantively respond to the demand letter or dispute any amounts.

195.    Boulevard IV did not pay the amounts due and owing to EPIC Midwest 2023.

196.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $31,040, plus interest and other fees and costs allowed by law.

**COUNT XVIII**
**ACCOUNT STATED**
**(EPIC Employee v. Boulevard III)**

197.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

198.    EPIC Employee demanded payment of Boulevard III's account with EPIC Employee.

199.    Boulevard III did not substantively respond to the demand letter or dispute any amounts.

200.    Boulevard III did not pay the amounts due and owing to EPIC Employee.

201.    As a result, EPIC Employee has been damaged in the amount of at least $30,975, plus interest and other fees and costs allowed by law.

## COUNT XIX
### PROMISSORY ESTOPPEL
**(EPIC Midwest v. Boulevard II)**

202.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

203.    Boulevard II promised it would make regular monthly payments to EPIC Midwest.

204.    In reasonable reliance on those promises, EPIC Midwest loaned a total of $50,000 to Boulevard II.

205.    EPIC Midwest was harmed by its reasonable reliance on Boulevard II's promises, as EPIC Midwest loaned $50,000 to Boulevard II and was not repaid.

206.    As a result, EPIC Midwest has been damaged in the amount of at least $41,118.02, plus interest and other fees and costs allowed by law.

## COUNT XX
### PROMISSORY ESTOPPEL
**(EPIC Midwest v. Boulevard III)**

207.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

208.    Boulevard III promised it would make regular monthly payments to EPIC Midwest.

209.    In reasonable reliance on those promises, EPIC Midwest loaned a total of $1,700,000 to Boulevard III.

210.    EPIC Midwest was harmed by its reasonable reliance on Boulevard III's promises, as EPIC Midwest loaned $1,700,000 to Boulevard III and was not repaid.

211.    As a result, EPIC Midwest has been damaged in the amount of at least $1,721,860.05, plus interest and other fees and costs allowed by law.

## COUNT XXI
## PROMISSORY ESTOPPEL
### (EPIC Midwest v. Boulevard IV)

212.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

213.    Boulevard IV promised it would make regular monthly payments to EPIC Midwest.

214.    In reasonable reliance on those promises, EPIC Midwest loaned a total of $225,000 to Boulevard IV.

215.    EPIC Midwest was harmed by its reasonable reliance on Boulevard IV's promises, as EPIC Midwest loaned $225,000 to Boulevard IV and was not repaid.

216.    As a result, EPIC Midwest has been damaged in the amount of at least $231,337.50, plus interest and other fees and costs allowed by law.

## COUNT XXI
## PROMISSORY ESTOPPEL
### (EPIC Midwest 2023 v. Boulevard III)

217.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

218.    Boulevard III promised it would make regular monthly payments to EPIC Midwest 2023.

219.    In reasonable reliance on those promises, EPIC Midwest 2023 loaned a total of $10,000 to Boulevard III.

220.    EPIC Midwest 2023 was harmed by its reasonable reliance on Boulevard III's promises, as EPIC Midwest 2023 loaned $10,000 to Boulevard III and was not repaid.

221.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $10,346.68, plus interest and other fees and costs allowed by law.

## COUNT XXII
## PROMISSORY ESTOPPEL
### (EPIC Midwest 2023 v. Boulevard IV)

222.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

223.    Boulevard IV promised it would make regular monthly payments to EPIC Midwest 2023.

224.    In reasonable reliance on those promises, EPIC Midwest 2023 loaned a total of $30,000 to Boulevard IV.

225.    EPIC Midwest 2023 was harmed by its reasonable reliance on Boulevard IV's promises, as EPIC Midwest 2023 loaned $30,000 to Boulevard IV and was not repaid.

226.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $31,040, plus interest and other fees and costs allowed by law.

## COUNT XXIII
## PROMISSORY ESTOPPEL
### (EPIC Employee v. Boulevard III)

227.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

228.    Boulevard III promised it would make regular monthly payments to EPIC Employee.

229.    In reasonable reliance on those promises, EPIC Employee loaned a total of $30,000 to Boulevard III.

230.    EPIC Employee was harmed by its reasonable reliance on Boulevard III's promises, as EPIC Employee loaned $30,000 to Boulevard III and was not repaid.

231.    As a result, EPIC Employee has been damaged in the amount of at least $30,975, plus interest and other fees and costs allowed by law.

## COUNT XXIV
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (EPIC Midwest v. Boulevard II)

232.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

233.    EPIC Midwest made the $50,000 September 22, 2022 transfer to Boulevard II and received less than reasonably equivalent value in exchange. Boulevard II did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $18,179.12 to EPIC Midwest despite receiving $50,000 from EPIC Midwest.

234.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that on September 22, 2022, and at all relevant times around the $50,000 September 22, 2022 transfer to Boulevard II, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small.

235.    On information and belief, on September 22, 2022, and at all relevant times around the $50,000 September 22, 2022 transfer to Boulevard II, EPIC Midwest intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

236.    The financial records reviewed by Lighthouse also indicate that on September 22, 2022, and at all relevant times around the $50,000 September 22, 2022 transfer to Boulevard II,

EPIC Midwest was insolvent or became insolvent as a result of $50,000 September 22, 2022 transfer to Boulevard II.

237.    Boulevard II was the initial transferee of the $50,000 September 22, 2022 transfer.

238.    Based on the foregoing, the $50,000 September 22, 2022 transfer to Boulevard II, which occurred within two years before the Petition Date, is avoidable, and should be avoided, as a fraudulent transfer or obligation pursuant to 11 U.S.C. § 548(a)(1)(B).

239.    Pursuant to 11 U.S.C. § 550(a), EPIC Midwest may recover such fraudulent transfer or obligation from Boulevard II in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XXV
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest v. Boulevard II)

240.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

241.    EPIC Midwest entered into the Boulevard II Note with Boulevard II and made the Boulevard II Transfers to Boulevard II and received less than reasonably equivalent value in exchange. Boulevard II did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $18,179.12 to EPIC Midwest despite receiving $50,000 from EPIC Midwest.

242.    Before, during, and after the period from October 1, 2021 to September 22, 2022, EPIC Midwest had creditors, including various individual investors.

243.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that

between October 1, 2021 and September 22, 2022, and at all relevant times between entry into the

Boulevard II Note and the Boulevard II Transfer to Boulevard II, EPIC Midwest was engaged or

was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest

were unreasonably small in relation to the business or transaction or EPIC Midwest intended to

incur, or believed or reasonably should have believed that it would incur, debts beyond its ability

to pay as the debts became due.

244.   Boulevard II was the first transferee of the Boulevard II Note and the Boulevard II

Transfer.

245.   Based on the foregoing, the Boulevard II Note and the Boulevard II Transfer are

avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent.

Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

246.   Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and

11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or

obligations from Boulevard II in an amount to be determined at trial, plus interest and other fees

and costs allowed by law.

**COUNT XXVI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EPIC Midwest v. Boulevard II)**

247.   The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if

set forth fully herein.

248.   EPIC Midwest entered into the Boulevard II Note with Boulevard II and made the

Boulevard II Transfer to Boulevard II and received less than reasonably equivalent value in

exchange. Boulevard II did not provide EPIC Midwest with a security interest in any collateral

and eventually only paid $18,179.12 to EPIC Midwest despite receiving $50,000 from EPIC Midwest.

249.    Before and during the period from October 1, 2021 to September 22, 2022, EPIC Midwest had creditors, including various individual investors.

250.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between October 1, 2021 and September 22, 2022, and at all relevant times between entry into the Boulevard II Note and the Boulevard II Transfer to Boulevard II, EPIC Midwest was insolvent or became insolvent thereafter.

251.    Boulevard II was the first transferee of the Boulevard II Note and the Boulevard II Transfer.

252.    Based on the foregoing, the Boulevard II Note and the Boulevard II Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

253.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from Boulevard II in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXVII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**11 U.S.C. §§ 548(a)(1)(B), 550(a)**
**(EPIC Midwest v. Boulevard III)**

254.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

255.    EPIC Midwest entered into the $300,000 January 1, 2023 note with Boulevard III and made the $50,000 January 6, 2023 and $250,000 January 12, 2023 transfers to Boulevard III and received less than reasonably equivalent value in exchange. Boulevard III did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $340,250.27 to EPIC Midwest despite receiving $600,000 from EPIC Midwest.

256.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that on between January 1, 2023 and January 12, 2023, and at all relevant times around the $300,000 January 1, 2023 note with Boulevard III and the $50,000 January 6, 2023 and $250,000 January 12, 2023 transfers to Boulevard III, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small.

257.    On information and belief, between January 1, 2023 and January 12, 2023, and at all relevant times around the $300,000 January 1, 2023 note with Boulevard III and the $50,000 January 6, 2023 and $250,000 January 12, 2023 transfers to Boulevard III, EPIC Midwest intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

258.    The financial records reviewed by Lighthouse also indicate that between January 1, 2023 and January 12, 2023, and at all relevant times around the $300,000 January 1, 2023 note with Boulevard III and the $50,000 January 6, 2023 and $250,000 January 12, 2023 transfers to Boulevard III, EPIC Midwest was insolvent or became insolvent as a result the $300,000 January 1, 2023 note with Boulevard III and the $50,000 January 6, 2023 and $250,000 January 12, 2023 transfers to Boulevard III.

259.    Boulevard III was the initial transferee of the $300,000 January 1, 2023 note with Boulevard III and the $50,000 January 6, 2023 and $250,000 January 12, 2023 transfers to Boulevard III.

260.    Based on the foregoing, the $300,000 January 1, 2023 note with Boulevard III and the $50,000 January 6, 2023 and $250,000 January 12, 2023 transfers to Boulevard III, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as a fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

261.    Pursuant to 11 U.S.C. § 550(a), EPIC Midwest may recover such fraudulent transfer or obligation from Boulevard III in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XXVIII
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)**
**(EPIC Midwest v. Boulevard III)**

262.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

263.    EPIC Midwest entered into the Boulevard III ECM Notes with Boulevard III and made the Boulevard III ECM Transfers to Boulevard III and received less than reasonably equivalent value in exchange. Boulevard III did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $340,250.27 to EPIC Midwest despite receiving $1,700,000 from EPIC Midwest.

264.    Before, during, and after the period from February 1, 2021 to January 12, 2023, EPIC Midwest had creditors, including various individual investors.

265.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between February 1, 2021 and January 12, 2023, and at all relevant times between entry into the Boulevard III ECM Notes with Boulevard III and the Boulevard III ECM Transfers to Boulevard III, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

266.    Boulevard III was the first transferee of the Boulevard III ECM Notes and the Boulevard III ECM Transfers.

267.    Based on the foregoing, Boulevard III ECM Notes with Boulevard III and the Boulevard III ECM Transfers to Boulevard III are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

268.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from Boulevard III in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXIX**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EPIC Midwest v. Boulevard III)**

269.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

270.    EPIC Midwest entered into the Boulevard III ECM Notes with Boulevard III and made the Boulevard III ECM Transfers to Boulevard III and received less than reasonably equivalent value in exchange. Boulevard III did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $340,250.27 to EPIC Midwest despite receiving $1,700,000 from EPIC Midwest.

271.    Before and during the period from February 1, 2021 to January 12, 2023, EPIC Midwest had creditors, including various individual investors.

272.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between February 1, 2021 and January 12, 2023, and at all relevant times between entry into the Boulevard III ECM Notes with Boulevard III and the Boulevard III ECM Transfers to Boulevard III, EPIC Midwest was insolvent or became insolvent thereafter.

273.    Boulevard III was the first transferee of the Boulevard III ECM Notes and the Boulevard III ECM Transfers.

274.    Based on the foregoing, the Boulevard III ECM Notes with Boulevard III and the Boulevard III ECM Transfers to Boulevard III are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

275.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from Boulevard III in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XXX
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (EPIC Midwest v. Boulevard IV)

276.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

277.     EPIC Midwest entered into the Boulevard IV ECM Note with Boulevard IV and made the Boulevard IV ECM Transfer to Boulevard IV and received less than reasonably equivalent value in exchange. Boulevard IV did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $25,593.75 to EPIC Midwest despite receiving $225,000 from EPIC Midwest.

278.     Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that on August 1, 2022, and at all relevant times between entry into the Boulevard IV ECM Note with Boulevard IV and the Boulevard IV ECM Transfer to Boulevard IV, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small.

279.     On information and belief, on August 1, 2022, and at all relevant times between entry into the Boulevard IV ECM Note with Boulevard IV and the Boulevard IV ECM Transfer to Boulevard IV, EPIC Midwest intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

280.     The financial records reviewed by Lighthouse also indicate that on August 1, 2022, and at all relevant times between entry into the Boulevard IV ECM Note with Boulevard IV and the Boulevard IV ECM Transfer to Boulevard IV, EPIC Midwest was insolvent or became

insolvent as a result of the Boulevard IV ECM Note with Boulevard IV and the Boulevard IV ECM Transfer to Boulevard IV.

281.    Boulevard IV was the initial transferee of the Boulevard IV ECM Note and the Boulevard IV ECM Transfer.

282.    Based on the foregoing, the Boulevard IV ECM Note and the Boulevard IV ECM Transfer, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

283.    Pursuant to 11 U.S.C. § 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from Boulevard IV in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

### COUNT XXXI
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest v. Boulevard IV)

284.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

285.    EPIC Midwest entered into the Boulevard IV ECM Note with Boulevard IV and made the Boulevard IV ECM Transfer to Boulevard IV and received less than reasonably equivalent value in exchange. Boulevard IV did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $25,593.75 to EPIC Midwest despite receiving $225,000 from EPIC Midwest.

286.    Before, during, and after August 1, 2022, EPIC Midwest had creditors, including various individual investors.

287.     Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that on August 1, 2022, and at all relevant times between entry into the Boulevard IV ECM Note with Boulevard IV and the Boulevard IV ECM Transfer to Boulevard IV, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

288.     Boulevard IV was the first transferee of the Boulevard IV ECM Note and the Boulevard IV ECM Transfer.

289.     Based on the foregoing, the Boulevard IV ECM Note and the Boulevard IV ECM Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

290.     Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from Boulevard IV in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXXII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EPIC Midwest v. Boulevard IV)**

291.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

292.    EPIC Midwest entered into the Boulevard IV ECM Note with Boulevard IV and made the Boulevard IV ECM Transfer to Boulevard IV and received less than reasonably equivalent value in exchange. Boulevard IV did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $25,593.75 to EPIC Midwest despite receiving $225,000 from EPIC Midwest.

293.    Before and during August 1, 2022, EPIC Midwest had creditors, including various individual investors.

294.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that on August 1, 2022, and at all relevant times between entry into the Boulevard IV ECM Note with Boulevard IV and the Boulevard IV ECM Transfer to Boulevard IV, EPIC Midwest was insolvent or became insolvent thereafter.

295.    Boulevard IV was the first transferee of the Boulevard IV ECM Note and the Boulevard IV ECM Transfer.

296.    Based on the foregoing, the Boulevard IV ECM Note and the Boulevard IV ECM Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

297.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from Boulevard IV in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXXIII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**11 U.S.C. §§ 548(a)(1)(B), 550(a)**
**(EPIC Midwest 2023 v. Boulevard III)**

298.   The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

299.   EPIC Midwest 2023 entered into the Boulevard III E23 Note with Boulevard III and made the Boulevard III E23 Transfer to Boulevard III and received less than reasonably equivalent value in exchange. Boulevard III did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $266.68 to EPIC Midwest 2023 despite receiving $10,000 from EPIC Midwest 2023.

300.   Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 26, 2023 and January 1, 2024, and at all relevant times between entry into the Boulevard III E23 Note with Boulevard III and the Boulevard III E23 Transfer to Boulevard III, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small.

301.   On information and belief, between December 26, 2023 and January 1, 2024, and at all relevant times between entry into the Boulevard III E23 Note with Boulevard III and the Boulevard III E23 Transfer to Boulevard III, EPIC Midwest 2023 intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

302.   The financial records reviewed by Lighthouse also indicate that between December 26, 2023 and January 1, 2024, and at all relevant times between entry into the Boulevard III E23 Note with Boulevard III and the Boulevard III E23 Transfer to Boulevard III, EPIC Midwest 2023

was insolvent or became insolvent as a result of the entry into the Boulevard III E23 Note with

Boulevard III and the Boulevard III E23 Transfer to Boulevard III.

303.    Boulevard III was the initial transferee of the Boulevard III E23 Note and the

Boulevard III E23 Transfer.

304.    Based on the foregoing, the Boulevard III E23 Note and the Boulevard III E23

Transfer, all of which occurred within two years before the Petition Date, are avoidable, and should

be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

305.    Pursuant to 11 U.S.C. § 550(a), EPIC Midwest 2023 may recover such fraudulent

transfers or obligations from Boulevard III in an amount to be determined at trial, plus interest and

other fees and costs allowed by law.

**COUNT XXXIV**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EPIC Midwest 2023 v. Boulevard III)**

306.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if

set forth fully herein.

307.    EPIC Midwest 2023 entered into the Boulevard III E23 Note with Boulevard III

and made the Boulevard III E23 Transfer to Boulevard III and received less than reasonably

equivalent value in exchange. Boulevard III did not provide EPIC Midwest 2023 with a security

interest in any collateral and eventually only paid $266.68 to EPIC Midwest 2023 despite receiving

$10,000 from EPIC Midwest 2023.

308.    Before, during, and after the period from December 26, 2023 to January 1, 2024,

EPIC Midwest 2023 had creditors, including various individual investors.

309.     Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 26, 2023 and January 1, 2024, and at all relevant times between entry into Boulevard III E23 Note with Boulevard III and the Boulevard III E23 Transfer to Boulevard III, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

310.     Boulevard III was the first transferee of the Boulevard III E23 Notes and the Boulevard III E23 Transfer.

311.     Based on the foregoing, the Boulevard III E23 Note and the Boulevard III E23 Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

312.     Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Boulevard III in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXXV**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EPIC Midwest 2023 v. Boulevard III)**

313.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

314.    EPIC Midwest 2023 entered into the Boulevard III E23 Note with Boulevard III and made the Boulevard III E23 Transfer to Boulevard III and received less than reasonably equivalent value in exchange. Boulevard III did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $266.68 to EPIC Midwest 2023 despite receiving $10,000 from EPIC Midwest 2023.

315.    Before and during the period from December 26, 2023 to January 1, 2024, EPIC Midwest 2023 had creditors, including various individual investors.

316.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 26, 2023 and January 1, 2024, and at all relevant times between entry into the Boulevard III E23 Note with Boulevard III and the Boulevard III E23 Transfer to Boulevard III, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

317.    Boulevard III was the first transferee of the Boulevard III E23 Note and the Boulevard III E23 Transfer.

318.    Based on the foregoing, the Boulevard III E23 Note and the Boulevard III E23 Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

319.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Boulevard III in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXXVI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**11 U.S.C. §§ 548(a)(1)(B), 550(a)**
**(EPIC Midwest 2023 v. Boulevard IV)**

320.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

321.     EPIC Midwest 2023 entered into the $10,000 January 1, 2024 note with Boulevard IV and made the $10,000 December 26, 2023 transfer to Boulevard IV and received less than reasonably equivalent value in exchange. Boulevard IV did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $1,733.31 to EPIC Midwest 2023 despite receiving $10,000 from EPIC Midwest 2023.

322.     Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 26, 2023 and January 1, 2024, and at all relevant times between entry into the $10,000 January 1, 2024 note with Boulevard IV and the $10,000 December 26, 2023 transfer to Boulevard IV, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small.

323.     On information and belief, between December 26, 2023 and January 1, 2024, and at all relevant times between entry into the $10,000 January 1, 2024 note with Boulevard IV and the $10,000 December 26, 2023 transfer to Boulevard IV, EPIC Midwest 2023 intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

324.     The financial records reviewed by Lighthouse also indicate that between December 26, 2023 and January 1, 2024, and at all relevant times between entry into the $10,000 January 1, 2024 note with Boulevard IV and the $10,000 December 26, 2023 transfer to Boulevard IV, EPIC

Midwest 2023 was insolvent or became insolvent as a result of the $10,000 January 1, 2024 note with Boulevard IV and the $10,000 December 26, 2023 transfer to Boulevard IV.

325.    Boulevard IV was the initial transferee of the $10,000 January 1, 2024 note with Boulevard IV and the $10,000 December 26, 2023 transfer to Boulevard IV.

326.    Based on the foregoing, the $10,000 January 1, 2024 note with Boulevard IV and the $10,000 December 26, 2023 transfer to Boulevard IV, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as a fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

327.    Pursuant to 11 U.S.C. § 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Boulevard IV in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXXVII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)**
**(EPIC Midwest 2023 v. Boulevard IV)**

328.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

329.    EPIC Midwest 2023 entered the Boulevard IV E23 Notes with Boulevard IV and made the Boulevard IV E23 Transfers to Boulevard IV and received less than reasonably equivalent value in exchange. Boulevard IV did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $1,733.31 to EPIC Midwest 2023 despite receiving $30,000 from EPIC Midwest 2023.

330.    Before, during, and after the period from June 1, 2023 to January 1, 2024, EPIC Midwest 2023 had creditors, including various individual investors.

331.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between June 1, 2023 and January 1, 2024, and at all relevant times between entry into the Boulevard IV E23 Notes with Boulevard IV and the Boulevard IV E23 Transfers to Boulevard IV, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

332.    Boulevard IV was the first transferee of the Boulevard IV E23 Notes and the Boulevard IV E23 Transfers.

333.    Based on the foregoing, the Boulevard IV E23 Notes and the Boulevard IV E23 Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

334.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Boulevard IV in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXXVIII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EPIC Midwest 2023 v. Boulevard IV)**

335.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

336.    EPIC Midwest 2023 entered into the Boulevard IV E23 Notes with Boulevard IV and made the Boulevard IV E23 Transfers to Boulevard IV and received less than reasonably equivalent value in exchange. Boulevard IV did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $1,733.31 to EPIC Midwest 2023 despite receiving $30,000 from EPIC Midwest 2023.

337.    Before and during the period from June 1, 2023 to January 1, 2024, EPIC Midwest 2023 had creditors, including various individual investors.

338.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between June 1, 2023 and January 1, 2024, and at all relevant times between entry into Boulevard IV E23 Notes with Boulevard IV and the Boulevard IV E23 Transfers to Boulevard IV, EPIC Midwest  2023 was insolvent or became insolvent thereafter.

339.    Boulevard IV was the first transferee of the Boulevard IV E23 Notes and the Boulevard IV E23 Transfers.

340.    Based on the foregoing, the Boulevard IV E23 Notes and the Boulevard IV E23 Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

341.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Boulevard IV in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXXIX**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**11 U.S.C. §§ 548(a)(1)(B), 550(a)**
**(EPIC Employee v. Boulevard III)**

342.   The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

343.   EPIC Employee entered into the EPIC Employee Note with Boulevard III and made the  EPIC Employee Transfer to Boulevard III and received less than reasonably equivalent value in exchange. Boulevard III did not provide EPIC Employee with a security interest in any collateral and did not make any payments to EPIC Employee despite receiving $30,000 from EPIC Employee.

344.   Lighthouse has reviewed EPIC Employee's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between April 17, 2024 and May 1, 2024, and at all relevant times between entry into the EPIC Employee Note with Boulevard III and the EPIC Employee Transfer to Boulevard III, EPIC Employee was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Employee were unreasonably small.

345.   On information and belief, between April 17, 2024 and May 1, 2024, and at all relevant times between entry into the EPIC Employee Note with Boulevard III and the EPIC Employee Transfer to Boulevard III, EPIC Employee intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

346.   The financial records reviewed by Lighthouse also indicate that between April 17, 2024 and May 1, 2024, and at all relevant times between entry into the EPIC Employee Note with Boulevard III and the EPIC Employee Transfer to Boulevard III, EPIC Employee was insolvent

or became insolvent as a result of the EPIC Employee Note with Boulevard III and the EPIC Employee Transfer to Boulevard III.

347.    Boulevard III was the initial transferee of the EPIC Employee Note and the EPIC Employee Transfer.

348.    Based on the foregoing, the EPIC Employee Note and the EPIC Employee Transfer, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

349.    Pursuant to 11 U.S.C. § 550(a), EPIC Employee may recover such fraudulent transfers or obligations from Boulevard III in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XL**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)**
**(EPIC Employee v. Boulevard III)**

350.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

351.    EPIC Employee entered into the EPIC Employee Note with Boulevard III and made the EPIC Employee Transfer to Boulevard III and received less than reasonably equivalent value in exchange. Boulevard III did not provide EPIC Employee with a security interest in any collateral and did not make any payment to EPIC Employee despite receiving $30,000 from EPIC Employee.

352.    Before, during, and after the period from April 17, 2024 to May 1, 2024, EPIC Employee had creditors, including various individual investors.

353.    Lighthouse has reviewed EPIC Employee's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that

between April 17, 2024 and May 1, 2024, and at all relevant times between entry into the EPIC Employee Note with Boulevard III and the EPIC Employee Transfer to Boulevard III, EPIC Employee was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Employee were unreasonably small in relation to the business or transaction or EPIC Employee intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

354.    Boulevard III was the first transferee of the EPIC Employee Note and the EPIC Employee Transfer.

355.    Based on the foregoing, the EPIC Employee Note and the EPIC Employee Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

356.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Employee may recover such fraudulent transfers or obligations from Boulevard III in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XLI
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Employee v. Boulevard III)

357.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

358.    EPIC Employee entered into the EPIC Employee Note with Boulevard III and made the EPIC Employee Transfer to Boulevard III and received less than reasonably equivalent value in exchange. Boulevard III did not provide EPIC Employee with a security interest in any collateral

and did not make any payments to EPIC Employee despite receiving $30,000 from EPIC Employee.

359.    Before and during the period from April 17, 2024 to May 1, 2024, EPIC Employee had creditors, including various individual investors.

360.    Lighthouse has reviewed EPIC Employee's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between April 17, 2024 and May 1, 2024, and at all relevant times between entry into the EPIC Employee Note with Boulevard III and the EPIC Employee Transfer to Boulevard III, EPIC Employee was insolvent or became insolvent thereafter.

361.    Boulevard III was the first transferee of the EPIC Employee Note and the EPIC Employee Transfer.

362.    Based on the foregoing, the EPIC Employee Note and the EPIC Employee Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

363.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Employee may recover such fraudulent transfers or obligations from Boulevard III in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

### PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully request that the Court grant the following relief:

A.    Enter judgment in favor of the Plaintiffs on their claims against the Defendants;

B.    Award the Plaintiffs their attorney's fees and costs for pursuing this action as allowed by applicable law and the relevant notes;

C.      Grant such other relief that the Court deems just and equitable.

Dated:  November 1, 2024                    */e/ Steven R. Kinsella*
                                            Michael S. Raum (#05676)
                                            **FREDRIKSON & BYRON, P.A.**
                                            51 Broadway, Suite 400
                                            Fargo, ND  58102-4991
                                            701.237.8200
                                            mraum@fredlaw.com

                                            Steven R. Kinsella (#09514)
                                            Katherine A. Nixon (*pro hac vice*, MN #0402772)
                                            **FREDRIKSON & BYRON, P.A.**
                                            60 South 6th Street, Suite 1500
                                            Minneapolis, MN  55402-4400
                                            612.492.7000
                                            skinsella@fredlaw.com
                                            knixon@fredlaw.com

                                            **ATTORNEYS FOR PLAINTIFFS**

## <u>AFFIDAVIT</u>

I, Patrick Finn, am a Partner of Lighthouse Management Group, Inc., the Chief Restructuring Officer for EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, and EPIC Employee, LLC and I declare under penalty of perjury that the facts set forth in the preceding Complaint are true and correct, according to the best of my knowledge, information, and belief.

Dated: November 1, 2024

/e/  PATRICK FINN

Patrick Finn
Partner, Lighthouse Management Group, Inc.
Chief Restructuring Officer for the Plaintiffs